UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

RECEIVED

PLAINTIFF SHELBY J. COOK, BY AND
THROUGH HER DAUGHTER, NEXT FRIEND AND
POWER OF ATTORNEY SHARON S. FOSTER, ET AL.

AUG 28 2019

RICHARD W. NAGEL
Clerk Of Court
CINCINNATI, OHIO

v.

DEFENDANTS, ATRIUM MEDICAL CENTER,
ATRIUM CHEIF ADMINISTRATOR DR. MICHAEL
UHL, DR. MEGAN E. COLE,
R.N. CHERYL A. WILKERSON, ET AL.



J. BLACK



MJ. LITKOVITZ

/

**COMPLAINT**

1. NEGLIGENCE
2. GROSS NEGLIGENCE
3. SPOILATION OF EVIDENCE

COMES NOW, Plaintiff SHELBY J. COOK, pro se, pursuant to Ohio Common Law and/or the applicable O.R.C. and brings the above listed claims against a hospital corporation and certain employee's and/or agents thereof for their breach of duty of care.

1. At all times relevant SHELBY J. COOK hereafter "Plaintiff" or "Ms. Cook" was a patient admitted to Atrium Medical Center care.

2. At all times relevant the Defendants were employee's and/or agents of Atrium Medical Center.

3. Ms. Cook brings this action pursuant to Ohio Rule 2305.16 for persons of unsound mind which prohibits such person's from being included in the negligence limitations period.

4. Ms. Cook further brings this cause of action under the doctrine of "Respondeat Superior" and holds vicariously liable Atrium Medical Center and Chief Administrator Dr. Michael Uhl for torts of employees and/or agents committed with the scope and furtherance of their employment.

5. Ms. Cook seeks punitive damages in this cause pursuant to O.R.C. 2315.21(c) under the theory of Malice due to Conscious Disregard of the rights and safety of Plaintiff.

1

6. Further, pursuant to O.R.C. 2315.18(b)(3) Ms. Cook pray's to have the statutory cap's for non-economic damages lifted due to the permanent and substantial physical deformity Plaintiff suffered.

7. In addition to all claim's listed herein Ms. Cook seeks to have sanctions brought against all defendants for "spoliation of evidence."

8. Ms. Cook pleads this cause under the doctrine of "Res Ipsa Loquitur" and "the common knowledge exception" where lay persons can conclude from common experience that the injury in question does not occur when the proper procedures are followed and thus no expert testimony is needed.

9. Ms. Cook avers that although the claims in this complaint arise from circumstances with a health care provider, the claims are not medical but 'ordinary negligence' and 'gross negligence.'

10. If the reasonableness of the health care professionals action can be evaluated by juror's on the basis of their common knowledge and experience it is "ordinary negligence". Bryant v. Oakpointe Villo Nursing Ctr., 684 N.W. 2d 864 (Mich).

## Jurisdictional Statement

11. Pursuant to 28 U.S.C. 1332 (a) the District Court shall have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

## Statement of Case and Fact

12. Ms. Shelby J. Cook is a dementia patient residing at a facility in Waynesville, Ohio known as Quaker Heights specializing in the care of dementia patients.

13. In 2013, several years prior to this cause of action Ms. Cook was diagnosed with dementia by her family physician.

14. There came a time when Ms. Cook could no longer live alone nor take proper care of matters in her own life.

15. Dementia is a mental disorder which is marked by memory failure, personality change and impaired reasoning.

16. Realizing this fact, Ms. Cook gave all power of attorney to her only daughter and was admitted to a facility for care.

17. On or about April 16, 2016 Ms. Cook fell; breaking her left hip.

2

18. Ms. Cook was transported by ambulance to Atrium Medical Center, a hospital corporation in Middletown, Ohio for surgery.

19. Prior to transport Atrium staff were notified that a dementia patient from Quaker Heights was on the way.

20. There is no record however that a fall risk assessment was completed for the Plaintiff nor a score calculation to determine what safety measures were required by a patient with Ms. Cook's physical and mental condition.

21. Ms. Cook's surgery was said to be successful, and she was sent to recovery by Atrium medical staff and there abandoned to an unacceptable recovery situation.

22. The bed was not lowered close to the floor. No bed alarm was activated. The side rail was raised, however; no further restraint was utilized to stop the patient from attempting to exit the bed.

23. Apparently no staff had been assigned to monitor the patients recovery and Ms. Cook regained consciousness alone.

24. No sounding bed alarm notified medical staff of a patient attempting to escape the safety of the recovery bed.

25. No medical staff was there to reach Ms. Cook before disaster struck.

26. Ms. Cook climbed over the bed's side rail and crashed to the floor crushing her hip and ruining her new prosthesis.

27. The record indicates that Defendant, Cheryl A. Wilkerson, discovered Ms. Cook and returned the Plaintiff to her bed.

28. The record further indicates that Defendant Wilkerson did not cause any examination to ascertain whether Ms. Cook was injured.

29. Later, Defendant Wilkerson filed a report which was factually fraudulent.

30. The report stated that R.N. Wilkerson had discovered Ms. Cook "lowering herself over the side of the bed" and plaintiff was returned to her bed safely.

31. The following day Ms. Cook was examined by defendant Dr. Megan E. Cole the attending physician prior to being released from Atrium care.

32. Defendant Cole signed the release of Ms. Cook as a successful hip replacement patient.

33. Ms. Cook was transported by ambulance to Quaker Heights without incident.

3

34. Quaker Heights staff has certified that the plaintiff was returned safely to her room and bed.

35. Physical therapy began sometime thereafter and continued for eleven days while therapists worked and exercised a hip that was severely damaged.

36. Quaker Heights medical staff administered pain medication to Ms. Cook, however therapy was so excruciating that medication offered no relief.

37.The need for larger dose's of pain medication alerted staff of a serious concern where x-rays were taken and the extreme damage to Ms. Cook was discovered.

38. Atrium Medical Center preformed the required second surgery where the damage found was so extensive that Ms. Cook's hip has to be cemented and wired prior to the transplant.

## Negligence

39. Plaintiff realleges paragraphs 1 thru 38 as if said paragraphs were set forth at length herein.

40. Atrium Medical Center and all defendants in this cause have breached the applicable standards of care owed to Ms. Cook and are the proximate cause of the damage suffered.

41. Upon arrival and admission to Atrium Medical Center the standard of care was breached when no "fall risk assessment" was completed and no "fall risk score" was calculated in order to determine the necessary safety procedures needed for an elderly dementia patient.

42. The applicable standard of care owed to Ms. Cook was breached when Atrium Medical Center staff abandoned Plaintiff to an unacceptable recovery bed that had no active bed alarm and had nothing other than a side rail to stop Plaintiff from exiting the bed on her own.

43. The applicable standards of care was further breached when Atrium staff failed to assign proper and adequate personnel to monitor Ms. Cook while in recovery, and to be there to attend to Plaintiffs needs when Ms. Cook became conscious.

## Breach of Care
## Defendant Wilkerson
## Gross Negligence

44. Plaintiff realleges paragraphs 1 thru 43 as if said paragraphs were set forth at length herein.

45. The record reflects that while doing rounds Defendant Wilkerson discovered Ms. Cook outside the recovery bed.

4

46. A report filed later indicated that Defendant Wilkerson had discovered Ms. Cook lowering herself over the bed rail, attempting to reach the floor.

47. In actuality, Defendant Wilkerson had discovered the Plaintiff on the floor at bed side attempting to pull herself up after having fallen.

48. Defendant Wilkerson filed a fraudulent report in order to avoid liability and responsibility for her own actions and the actions of others.

49. The fraudulent report caused no examination of Ms. Cook to ascertain whether any harm had been done from a probable fall.

50. Further, Defendant Wilkerson breached the duty of care through the theory of "Malice" by Conscious Disregard.

51. Defendant Wilkerson is a registered nurse with several years in the medical field and with additional experience in a hospital's surgical environment who knew or should have known of the substantial harm that could be done to an elderly surgery patient in a fall and further the great probability of the substantial harm that would likely incur in the future if the fall went undetected.

52. In the instant case, Defendant Wilkerson clearly disregarded Ms. Cook's rights and showed a positive element of conscious wrong doing when the Defendant deliberately hid the facts pertaining to a probable fall, filed a false report and caused no examination of Ms. Cook where probable substantial damage had been done.

53. Gross negligence has been characterized as a willful disregard of safety measures and a singular disregard for substantial risks. Here defendant Wilkerson's conduct was so reckless as to demonstrate a substantial lack of concern for whether Ms. Cook was injured and can be nothing less than "gross negligence."

## Breach of Care
## Defendant Dr. Cole

54. Plaintiff realleges paragraphs 1 thru 53 as if said paragraphs were set forth at length herein.

55. Defendant Cole breached the applicable standard of care owed to Ms. Cook and was a proximate cause of the damage suffered by the Plaintiff.

56. The day after surgery Defendant Cole released Ms. Cook from Atrium Medical Center care as a successful hip transplant patient.

5

57. Ms. Cook was released without proper examination to begin a regime of physical therapy that could have resulted in the patient's death due to fatal blood clots, coronary thrombosis, infarct, etc.

58. A doctor releasing a patient from care has a duty and responsibility to that patient to ascertain that the patient is in proper and fit condition for release.

59. Defendant Cole breached the applicable standard of care owed to the Plaintiff when the Defendant released the Plaintiff from Atrium Medical Center with a crushed hip, and was a proximate cause of the extreme damage suffered.

**Breach of Care**
**1. Atrium Medical Center**
**2. Administrator Dr. M. Uhl**

### Theory of "Respondeat Superior" Vicarious liability

60. Plaintiff realleges paragraphs 1 thru 59 as if said paragraphs were set forth at length herein.

61. Defendant M. Uhl breached the applicable standard of care owed to Ms. Cook and was a proximate cause of the damage suffered.

62. Defendant Uhl was the Chief of Atrium Medical Center and the immediate supervisor of all Defendants listed or unlisted in this cause.

63. Under a theory of "vicarious liability" or "Respondeat Superior" an employer is vicariously or secondarily liable for the negligence of its employee whose liability is primary. Brautigam v. Damon, 697 Fed Appx. 844.

64. Defendant Uhl is liable under the doctrine of 'Respondeat Superior' for the negligence of the staff charged with the Plaintiffs care and "directly liable" for negligent hiring, training, and supervisory operations of the hospital.

65. For the wrong of a servant acting within the scope of his/her authority Plaintiff has a right of action against either the master or the servant or both.

66. Under this theory Dr. M. Uhl is liable despite having no fault whatsoever for the acts of its employee's taken within the scope of their employment. Jones v. Federated Fin. Reserve Corp. 144 F.3d 961, 965 (6th Cr 1998).

**ORC 2315.21 (c)**
**Punitive Damage**

### Malice through Conscious Disregard

67. Plaintiff realleges paragraphs 1 thru 66 as if said paragraphs were set forth at length herein.

68. In Ohio punitive damage may be awarded after a plaintiff establishes that the actions or omissions of a defendant demonstrate malice or aggravated or egregious fraud.

69. Plaintiff argues that punitive damages are warranted in this cause where "Malice" through the theory of 'Conscious Disregard' for the rights and safety of Ms. Cook was deliberate and intentional by:
          (a) Submitting a fraudulent report to conceal facts, and
          (b) Not causing an examination of the plaintiff to ensure that no injury had been done in a probable fall.

70. Further, punitive damages may be awarded whether or not the act of altering, falsifying or destroying records directly causes compensable harm. Moskovitz v. Mt. Sinai Med Cntr., 635 N.E. 2d 331.

71. Defendant Wilkerson consciously, deliberately, and intentionally concealed facts, filed a fraudulent report, and clearly disregarded Ms. Cook's rights and the probable substantial harm done in a fall and the future harm that would result if undetected.

72. In the instant case the Plaintiff has shown punitive damages are appropriate by clear and convincing evidence. ORC 2315.21 (d) (4).

### Doctrine of Res Ipsa Loquitur
### Theory of Common Knowledge

73. Plaintiff realleges paragraphs 1 thru 72 as if said paragraphs were set forth at length herein.

74. Ms. Cook seeks to plead this cause of action under the doctrine of Res Ipsa and/or the theory of common knowledge.

75. Ms. Cook contends that in this cause the circumstantial evidence is strong enough to support the reasonable inferences necessary to Plaintiff's case.

76. In health care liability actions expert testimony is required to establish the recognized standard of exceptable practice within the profession, "unless the claim falls within the Common Knowledge exception."

7

77. Jurors are permitted to infer negligence based upon a common sense understanding that such injuries do not ordinarily occur unless the attending physician or medical staff was somehow negligent.

78. The video surveillance tape evidencing the actual fall from the recovery bed was withheld to avoid liability; however, the circumstances prior to and after the fall should allow a jury to infer negligence and gross negligence.

79. Expert testimony on causation is not required when a lay person can conclude from common experience that the injury in question does not occur when proper procedures are followed. Pervins v. Hausladen, 828 S.W. 2d 652; Jones v. Hawk's Hosp., 196 N.E. 2d 592; Urdang v. Maher, 158 NE 2d 902; Berdyck v. Shinder, 613 N.E. 2d at 1022 (Common knowledge exception most commonly applicable in situations where an unattended patient falls out of bed.)

80. Because the Atrium Defendant's negligent acts are quite obvious Ms. Cook should not be required to present expert testimony at trial to establish the breach of the standard of care or the resulting negligence.

## Spoliation of Evidence

81. Plaintiff realleges paragraphs 1 thru 80 as if said paragraphs were set forth at length herein.

82. A tort cause of action exists for spoliation of evidence if: (i) There is pending or probable litigation, (ii) Knowledge by defendant that litigation exists, (iii) Willful destruction of evidence by defendant to disrupt the case, (iv) Disruption, and (v) Damages caused by defendant.

83. After Ms. Cook's second surgery the Plaintiffs daughter and power of attorney began a somewhat slowly moving investigation into what had factually occurred after Ms. Cook's first surgery.

84. Plaintiff's daughter sought medical records and reports along with the surveillance video tape of the recovery room incident.

85. After many months Plaintiff's daughter was finally able to obtain some medical records, however was told that there was no surveilance video tape of the recovery room incident.

86. Ms. Cook alleges here that there was indeed a video tape which evidenced the fall from her recovery bed and further Defendant Wilkerson's discovery and the surveillance tape was withheld from the Plaintiff and likely destroyed in an attempt to avoid liability for the damage suffered by the Plaintiff.

87. Destruction of medical record by medical staff to avoid liability is sufficient to show actual malice, whether or not the act of altering, falsifying or destroying records directly cause's compensable harm. Moskovitz v. Mt. Sinai Medical Center, 635 NE 2d 331.

88. Ms. Cook seeks sanctions against the Atrium defendants and strongly urges that after the discovery of the extreme damage and the second surgery, there was certainly pending or probable litigation, the defendants knew the facts and that litigation existed, with holding the evidence (video surveillance tape) would disrupt the case and did disrupt the case, and that all damages were proximately caused by the Atrium defendants.

89. All facts considered Ms. Cooks contends that sanctions are warranted in this cause.

## O.R.C. 2315.18(B)(3)
## Statutory Damage Caps

90. Plaintiff realleges paragraphs 1 thru 89 as if said paragraphs were set forth at length herein.

91. Ms. Cook prays to have the statutory damage caps for noneconomic damages lifted in this cause of action due to the permanent and substantial physical deformity the Plaintiff has suffered.

92. Due to the negligence of Atrium Medical Center and the Atrium Defendants, Ms. Cook's hip was crushed while in Atrium's care.

93. The injury suffered by Ms. Cook was indeed catastrophic in nature.

94. The internal damage done to Ms. Cook was so severe that Plaintiff's hip had to be cemented and wired before a new prosthesis could be transplanted.

95. In the instant case Ms. Cook urges that as a matter of law internal modifications of a person's body structure qualify as permanent and substantial physical deformity. Ohle v. D.J.O. Inc., 1:09.cv-02794 2012 U.S. Dist. 140020.

96. The second surgery and the required incision have further caused the scarring to be a permanent and substantial physical deformity.

97. The Plaintiff contends that there is sufficient evidence to create  a genuine issue of material fact as to whether the injury to Ms. Cook's hip caused her to suffer a permanent and substantial physical deformity as provided in O.R.C. 2315.18(B)(3)(a).

98. Further Plaintiff avers that it cannot be stated as a matter of law that Ms. Cook has not suffered a permanent and substantial physical deformity and it is a factual determination best left for a jury to decide.

99. Atrium Medical Center and all listed and unnamed Defendant's have breached the applicable standard of care owed their patient.

100. In the instant case Defendants:
    (i) Failed to properly assess and evaluate Plaintiff upon admitting patient into Atrium care;
    (ii) Failed to utilize proper fall risk criteria;
    (iii) Failed to assign proper and adequate personal to monitor patients recovery;
    (iv) Failed to properly monitor Plaintiff while in recovery;
    (v) Failed to provide a safe and secure recovery bed;
    (vi) Failed to file a factual report;
    (vii) Filed a fraudulent and altered report to conceal facts in an attempt to avoid liability for their actions.
    (viii) Failed to examine Plaintiff for damage after a probable fall.
    (ix) Failed to properly examine Plaintiff prior to releasing Plaintiff from Atrium Medical Center care.
    (x) Releasing Plaintiff from care while Plaintiff had a crushed hip.
    (xi) Failed to properly educate, train and supervise employee's and/or agents of Atrium Medical Center.

101. Now Ms. Cook strongly urges that the acts omissions and failures of Atrium Medical Center and all Defendants are obvious.

102. Further, no expert testimony on causation is required where a jury of a lay persons can conclude from common experience the Defendant's negligence and the Plaintiff's damage.

### Demand for Damage's
### Alternate Pleading

103. Plaintiff realleges paragraphs 1 thru 102 as if said paragraphs were set forth at length herein.

104. Ms. Cook seeks noneconomic damage for extreme pain and suffering, mental anguish, anxiety and emotional distress.

105. Further, punitive damage is sought for the reckless, outrageous, fraudulent actions of the Defendants herein that have caused irreparable damage to Ms. Cook.

106. Pursuant to O.R.C. 2315.18(B)(2) there is a cap for the recovery of non-economic damages limited to $250,000.00.

107. Pursuant to O.R.C. 2315.21(c)(1) Plaintiff may seek punitive damages twice the amount of the non-economic damages claimed.

108. In the instant cause of action Ms. Cook seeks $750,000.00:
    (i) Noneconomic damage of $250,000.00
    (ii) Punitive damage of $500,000.00
    (iii) Sanctions for spoliation of evidence

### In the Alternative

109. If a jury should determine that there is a permanent and substantial physical deformity pursuant to O.R.C. 2315.18(B)(3) Ms. Cook seeks $1,200,000.00. Slezak v. Marina Midland Bank, 1992 WL 697461.

(i) Noneconomic damage of $400,000.00
(ii) Punitive damage of $800,000.00
(iii) Sanctions for spoliation of evidence
(iv) *Applicable interest*

### Demand for Jury Trial

110. Plaintiff hereby demands a trial by jury.

Under penalties of perjury, I declare that the foregoing is true to the best of my knowledge and belief.

SHELBY J. COOK

By: *Sharon S Foster*

Sharon S. Foster her attorney-in-fact